IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN SMITH,** | : | CIVIL ACTION NO. 1:22-CV-200 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **J.J. MORGAN,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, John Smith, an inmate in Waymart State Correctional Institution ("SCI-Waymart"), alleges that defendant J.J. Morgan violated his civil rights by falsifying misconduct charges against him that resulted in his placement in the Restricted Housing Unit. The case initially proceeded solely against Morgan, but Smith has since filed an amended complaint naming sixteen other defendants and asserting claims for a litany of alleged incidents that occurred during his misconduct hearing and after he was placed in the RHU, including a strip search, a medical examination, confiscation of $36.00 worth of donuts, and the alleged theft of a bag of cookies from his cell. Having considered the amended complaint pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A, we will dismiss Smith's claims against all defendants other than Morgan, Davis, and McKeown.

**I.     Factual Background & Procedural History**

Smith filed his initial complaint on February 10, 2022. (Doc. 1). The court granted his motion for leave to amend on November 2, 2022. (Doc. 14). After the

court granted numerous extensions of time, Smith filed his amended complaint on February 8, 2023. (Doc. 23).

According to the amended complaint, Morgan, a correctional officer in the prison, enlisted another inmate in the prison to make a false complaint against Smith under the Prison Rape Elimination Act ("PREA") stating that Smith and the inmate had engaged in sexual acts with each other while in the shower. (Id. at 6-7). Shortly after this incident, Smith was in a bathroom in the prison on February 18, 2020 when Morgan entered the bathroom and allegedly yelled at Smith, "Hey, shut your fucking mouth!" (Id. at 10). Smith responded that he considered this statement abusive and that he wished to make a complaint. (Id. at 11).

Morgan was standing in the doorway of the bathroom when Smith began to walk towards the door to exit the bathroom. (Id.) Morgan allowed him to walk past, but then called other correctional officers on the radio and stated that Smith "came at" him. (Id.) Defendant Evans, another correctional officer in the prison, responded to the incident and handcuffed Smith without incident. (Id. at 12). Defendant Lower also responded and began filming using a handheld camera as Smith was escorted to the RHU. (Id.) Upon Smith's arrival in the RHU, Lower conducted a strip search of him pursuant to DOC policy requiring such searches when inmates are admitted into the RHU. (Id.) A prison nurse then examined Smith at Lower's direction. (Id.)

Morgan allegedly filed a disciplinary charge against Smith based on the February 18, 2020 incident and another incident in which Smith was allegedly stealing cable television in his cell. (Id. at 13). The case was referred for a hearing

before a disciplinary hearing officer. In preparation for the hearing, Smith sought to submit a list of requested witnesses to defendant Davis, a housing officer in the prison, for a staff signature On February 19, 2020. (Id. at 14). Davis allegedly responded, "I'm not fucking signing anything" and walked away. (Id.) Smith requested a signature from Davis again later that day, but Davis again refused to sign the witness list. (Id.) The amended complaint alleges that defendants Lower, Miller, and John Doe had a duty to investigate relevant video footage related to the incident between Smith and Morgan and that if they had done so they would have seen that Morgan's version of events was false. (Id. at 15-16).

Smith attended a misconduct hearing on February 20, 2020 conducted by defendant McKeown. (Id. at 16). McKeown allegedly denied Smith the right to call witnesses, to cross-examine adverse witnesses, or to present evidence. (Id. at 17). McKeown dismissed the charges against Smith for theft of services and refusing to obey an order, but otherwise found Smith guilty of the other charges and sentenced him to 30 days in the RHU based on Morgan's testimony. (Id. at 17-20). Smith appealed the misconduct violation to a Program Review Committee ("PRC") consisting of defendants Gorman, Chiumento, and Altemer. (Id. at 20). The PRC denied the appeal on March 10, 2020. (Id.) Smith appealed to the facility manager, defendant Miller, who allegedly failed to respond. (Id. at 22).

The amended complaint alleges that prior to the incident involving Morgan and the resulting misconduct charges, Smith ordered $36.00 of donuts from an inmate-run organization called "Waymart Inmates Nurturing Growth" ("WING").

3

(Id. at 19).  The donuts were delivered while Smith was in the RHU, and were therefore forfeited in accordance with DOC policy.  (Id.)

After completing his sentence in the RHU, Smith allegedly noticed a box containing personal items in his cell was torn.  (Id. at 23).  Smith was also allegedly given a pair of boots that did not belong to him.  (Id.)  Defendant Hendrick allegedly came to Smith's cell in March 2020 to inventory Smith's property and asked Smith to sign an inventory sheet.  (Id.)  Upon conducting the inventory, Smith noticed that a bag of cookies and a pair of shower shoes had been "stolen" from the cell.  (Id.)  Hendrick allegedly called officers in the RHU on the radio during this exchange and stated while laughing, "you guys ate his cookies didn't you?"  (Id. at 24).

The amended complaint asserts 61 claims for relief arising under the United States Constitution, the Pennsylvania Constitution, federal statutes, state statutes, and common law, but contains almost no explanation as to which facts support each of these claims.  (See id. at 46-56).  Smith seeks declaratory relief, injunctive relief, and damages.

## II. Legal Standard

The Prison Litigation Reform Act authorizes a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity.  See 28 U.S.C. §

1915(e)(2);[1] 28 U.S.C. § 1915A.[2]  The court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

### III.   Discussion

Smith brings his constitutional claims under 42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law.

---

[1] 28 U.S.C. § 1915(e)(2) provides:

**(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
  **(A)** the allegation of poverty is untrue; or
  **(B)** the action or appeal—
    **(i)** is frivolous or malicious;
    **(ii)** fails to state a claim on which relief may be granted; or
    **(iii)** seeks monetary relief against a defendant who is immune from such relief.

[2] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
  **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
  **(2)** seeks monetary relief from a defendant who is immune from such relief.

See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

We will dismiss Smith's claims against all defendants other than Morgan, Davis, and McKeown.  To begin, defendants Gorman, Chiumento, Altemer, Miller, and John Doe will be dismissed for Smith's failure to allege their personal involvement.  A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018).  The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence.  Id.  A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights.  Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).  Smith's claims against Gorman, Chiumento, Altemer, Miller, and John Doe appear to be based entirely on their supervisory roles in the prison and their responses to Smith's grievances, neither of which are sufficient to allege personal involvement.  See id.; Rode, 854 F.2d at 1207.

The claims against defendants Morcom and Hendrick will be dismissed for failure to state a claim upon which relief may be granted.  It is alleged that Morcom

6

and Hendrick denied Smith a grievance form. (Doc. 23 at 20). The denial of a grievance form on one occasion does not amount to a constitutional violation. See, e.g., Stringer v. Bureau of Prisons, Federal Agency, 145 F. App'x 751, 753 (3d Cir. 2005) (nonprecedential).[3]

The amended complaint further alleges that during an inventory of Smith's personal property, he and Hendrick discovered that a bag of cookies and a pair of shower shoes were missing. (Id. at 24). Hendrick allegedly called someone on his radio and joked, "you guys ate his cookies didn't you?" (Id.) It is not alleged that Hendrick either caused or witnessed the disappearance of the cookies and shoes. (See id.) Smith's shoes were subsequently located, which led Hendrick to bring the shoes to Smith's cell and "violently kick" them at Smith. (Id. at 25). There is no allegation that the shoes hit Smith or caused him any harm. (Id.) Hence, the allegations against Hendrick amount to nothing more than verbal harassment and teasing, which are not sufficient to allege a violation of the constitution. See, e.g., Washington v. Rozich, 734 F. App'x 798, 801 (3d Cir. 2018); Rieco v. Moran, 633 F. App'x 76, 79 (3d Cir. 2015).

Defendants SCI-Waymart and the DOC will be dismissed because they are not proper defendants in Section 1983 civil rights actions. See Foye v. Wexford Health Servs., Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (nonprecedential); Curtis v. Everette, 489 F.2d 516, 521 (3d Cir. 1973).

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

Defendant WING, Merkel, and Turano will be dismissed because the amended complaint fails to allege that they acted under color of state law. The amended complaint alleges that WING is a non-profit corporation run by inmates and that Merkel and Turano are officials of the corporation. (Doc. 23 at 19, 31). Other than the conclusory assertion that WING is an "agency of the state," there is no allegation as to how WING, Merkel, and Turano acted under color of state law. The amended complaint accordingly fails to state a claim upon which relief may be granted against these defendants. See Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (noting that plaintiff in Section 1983 civil rights case has the burden to establish that defendants acted under color of state law).

Finally, the claims against defendants Evans and Lower will be dismissed on the basis of qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al-Kidd, 536 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Government officials are entitled to qualified immunity if reasonable officials in the same circumstances could have believed that their actions were lawful. Hunter v. Bryant, 502 U.S. 224, 228-29 (1991); Good v. Dauphin Cnty. Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989). The doctrine protects from suit "all but the plainly incompetent or those who knowingly violate the law." Hunter, 502 U.S. 229 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986). Although qualified immunity is an affirmative defense, it may be raised *sua sponte* in

appropriate circumstances.  See, e.g., Doe v. Delie, 257 F.3d 309, 312 (3d Cir. 2001); see also Howell v. Young, 530 F. App'x 98, 100 (3d Cir. 2013) (noting that qualified immunity may be raised *sua sponte* if the defense is apparent from the face of the complaint); cf. Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002) (noting that affirmative defenses may be raised *sua sponte* when they are apparent from the face of the complaint).

The amended complaint alleges that defendants Evans and Lower escorted Smith to the RHU based on a disciplinary charge, strip searched him, and directed a prison nurse to conduct a medical examination on him before admitting him into the RHU.  Reasonable officials in the same circumstances would conclude that these actions were lawful.  See, e.g., Parkell v. Danberg, 833 F.3d 313, 325-26 (3d Cir. 2016) (holding that strip searches reasonably related to legitimate government interests of preserving prison safety and security do not violate the Constitution); Brown v. Blaine, 185 F. App'x 166, 170 (3d Cir. 2006) (noting that DOC policy requires inmates to be strip searched when they are transferred to the RHU and finding that these searches do not violate the constitution).

Before dismissing a civil rights claim for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  Phillips, 515 F.3d at 245.  We will deny leave to amend as futile with respect to the claims against SCI-Waymart and the DOC because those claims fail as a matter of law, but we will grant leave to amend in all other respects.

9

## IV. Conclusion

We will dismiss Smith's claims against all defendants other than Morgan, Davis, McKeown for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. 1915(e)(2) and 28 U.S.C. § 1915A. We will grant leave to amend as to all claims other than those asserted against SCI-Waymart and the DOC. Service of process will be deferred pending the possible filing of an amended complaint. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    July 17, 2023