IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN SMITH, | : CIVIL ACTION NO. 1:22-CV-200 |
|  Plaintiff | : (Judge Conner) |
| v. | : |
| J.J. MORGAN, *et al.*, | : |
|  Defendants | : |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, John Smith, a prisoner incarcerated in Huntingdon State Correctional Institution ("SCI-Huntingdon") who was incarcerated in Waymart State Correctional Institution ("SCI-Waymart") at all relevant times, alleges violations of his civil rights under federal and Pennsylvania law arising from an incident in which defendant J.J. Morgan allegedly falsified misconduct charges against him. The case is proceeding on Smith's amended complaint. The remaining defendants have moved to dismiss the amended complaint except to the extent that it states a retaliation claim against Morgan. The motion will be granted in part and denied in part, the claims against defendants Davis and McKeown will be dismissed without further leave to amend, and Smith will be granted leave to file a second amended complaint with respect to his claims against Morgan only.

**I.    Factual Background & Procedural History**

Smith filed his original complaint on February 2, 2022, and the court received and docketed it on February 10, 2022. (Doc. 1). The original complaint asserted

civil rights claims only against defendant Morgan. (Id.) The court granted Smith leave to amend the complaint, and he filed an amended complaint on February 8, 2023. (Doc. 23). The amended complaint greatly expands the scope of Smith's allegations by adding claims against sixteen defendants. (Id.) The amended complaint asserts 61 claims for relief arising under the United States Constitution, the Pennsylvania Constitution, federal statutes, state statutes, and common law, but contains almost no explanation as to which facts support each of these claims. (See id. at 46-56).

According to the amended complaint, Morgan, a correctional officer in the prison, enlisted another inmate in the prison to make a false complaint against Smith under the Prison Rape Elimination Act ("PREA") stating that Smith and the inmate had engaged in sexual acts with each other while in the shower. (Id. at 6-7). These allegedly false allegations led to rumors spreading among other inmates that purportedly created a risk that Smith would be sexually assaulted by other inmates. (Id. at 7). The amended complaint alleges that "other inmates began approaching [Smith] . . . because they heard that that [he] wanted to engage" in sexual acts with other inmates. (Id.)

Shortly after this incident, Smith was in a bathroom on February 18, 2020, when Morgan entered the bathroom and allegedly yelled at Smith, "Hey, shut your fucking mouth!" (Id. at 10). Smith responded that he considered this statement abusive and that he wished to make a complaint. (Id. at 11).

Morgan was standing in the doorway of the bathroom when Smith began to walk towards the door to exit the bathroom. (Id.) Morgan allowed him to walk past,

2

but then called other correctional officers on the radio and stated that Smith "came at" him. (Id.) Evans, another correctional officer in the prison, responded to the incident and handcuffed Smith without incident. (Id. at 12). Correctional officer Lower also responded and began filming using a handheld camera as Smith was escorted to the RHU. (Id.) Upon Smith's arrival in the RHU, Lower conducted a strip search of him pursuant to DOC policy requiring such searches when inmates are admitted into the RHU. (Id.) A prison nurse then examined Smith at Lower's direction. (Id.)

Morgan allegedly filed a disciplinary charge against Smith based on the February 18, 2020 incident and another incident in which Smith was allegedly stealing cable television in his cell. (Id. at 13). The case was referred for a hearing before a disciplinary hearing officer. In preparation for the hearing, Smith sought to submit a list of requested witnesses to defendant Davis, a housing officer in the prison, for a staff signature On February 19, 2020. (Id. at 14). Davis allegedly responded, "I'm not fucking signing anything" and walked away. (Id.) Smith requested a signature from Davis again later that day, but Davis again refused to sign the witness list. (Id.)

Smith attended a misconduct hearing on February 20, 2020 conducted by defendant McKeown. (Id. at 16). McKeown allegedly denied Smith the right to call witnesses, to cross-examine adverse witnesses, or to present evidence. (Id. at 17). McKeown dismissed the charges against Smith for theft of services and refusing to obey an order, but found Smith guilty of the other charges and sentenced him to 30 days in the RHU. (Id. at 17-20).

The amended complaint alleges that prior to the incident involving Morgan and the resulting misconduct charges, Smith ordered $36.00 of donuts from an inmate-run organization called "Waymart Inmates Nurturing Growth" ("WING"). (Id. at 19). The donuts were delivered while Smith was in the RHU, and were forfeited in accordance with DOC policy. (Id.)

After completing his sentence in the RHU, Smith allegedly noticed a box containing personal items in his cell was torn. (Id. at 23). Smith was also allegedly given a pair of boots that did not belong to him. (Id.) Defendant Hendrick allegedly came to Smith's cell in March 2020 to inventory Smith's property and asked Smith to sign an inventory sheet. (Id.) Upon conducting the inventory, Smith noticed that a bag of cookies and a pair of shower shoes had been "stolen" from the cell. (Id.) Hendrick allegedly called officers in the RHU on the radio during this exchange and stated while laughing, "you guys ate his cookies didn't you?" (Id. at 24).

On July 17, 2023, the court screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A and dismissed Smith's claims against all defendants other than Morgan, Davis, and McKeown. (Docs. 26-27). The court granted Smith leave to amend the complaint. (Doc. 27). Smith did not file a second amended complaint, so the court dismissed all defendants other than Morgan, Davis, and McKeown without further leave to amend and ordered service of the amended complaint on those defendants on October 13, 2023. (Doc. 33).

Defendants[1] moved to dismiss the amended complaint in part on February 9, 2024. (Doc. 53). Defendants' motion initially sought dismissal of all claims other than Smith's First Amendment retaliation claim against Morgan and his Fourteenth Amendment due process claim against Davis and McKeown. (Id.) Defendants revised this request in their brief in support of the motion to dismiss and clarified that they are now seeking dismissal of all claims other than the retaliation claim against Morgan. (Doc. 65). Briefing on the motion is complete and it is ripe for review. (Docs. 65, 73, 83).

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605

---

[1] Because all other defendants have been dismissed, the court will collectively refer to Morgan, Davis, and McKeown as "defendants" for the remainder of this opinion.

F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. 957, 960 (2018). Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III. Discussion

Smith brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants' motion to dismiss argues (1) that any claims arising from Smith's loss of personal property in March 2020 should be dismissed for failure to exhaust administrative remedies; (2) that Smith's federal constitutional claims—with the exception of his First Amendment retaliation claim against defendant Morgan—fail to state a claim upon which relief may be granted; (3) that Smith's claims for violation of the Pennsylvania Constitution should be dismissed because Pennsylvania law does not allow damages for constitutional violations; and (4) that Smith's state law tort claims should be dismissed because they fail to state a claim upon which relief may be granted and because defendants are entitled to sovereign immunity from the claims. (Doc. 65).

#### A. Pennsylvania Constitutional Claims

At the outset, defendants are correct that Smith's claims for violation of the Pennsylvania Constitution are properly dismissed. Pennsylvania law does not allow

plaintiffs to recover damages for violation of the Pennsylvania Constitution. <u>Mt. Airy #1 LLC v. Pa. Dep't of Revenue & Eileen McNulty</u>, 154 A.3d 268, 280 n.11 (3d Cir. 2016). And to the extent Smith seeks injunctive or declaratory relief for violations of the Pennsylvania Constitution, his claims fail because his amended complaint alleges only past harms of his civil rights. Injunctive and declaratory relief are forward looking remedies that may not be awarded solely based on past harms. <u>Yaw v. Del. River Basin Comm'n</u>, 49 F.4th 302, 317-18 (3d Cir. 2022). Thus, because there are no available remedies to redress the alleged violations of the Pennsylvania Constitution, we will grant summary judgment on these claims.

### B.    State Tort Claims

Smith's tort claims will be dismissed based on sovereign immunity. Pennsylvania law provides that Commonwealth employees acting within the scope of their employment are entitled to sovereign immunity from most state law claims. <u>See</u> 1 Pa.C.S. § 2310. With ten limited exceptions, <u>see</u> 42 Pa.C.S. § 8522, Commonwealth employees retain their sovereign immunity with respect to both intentional tort and negligence claims. <u>See</u> <u>Mitchell v. Luckenbill</u>, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citing <u>Holt v. Nw. Pa. Training P'Ship Consortium, Inc.</u>, 694 A.2d 1134, 1139 (Pa. Commw. Ct. 1997)). None of the ten exceptions to sovereign immunity apply in the instant case.

Smith argues that Morgan's actions of making allegedly false allegations against him were not within the scope of his employment.[2] (Doc. 83 at 42). A defendant's action is within the scope of his employment if (1) it is the kind of action that the employee is employed to perform; (2) it occurs substantially within the job's authorized time and space limits; and (3) it is motivated at least in part by a desire to serve the employer. Farmer v. Decker, 353 F. Supp. 3d 342, 350 (M.D. Pa. 2018). Here, Morgan's actions—initiating misconduct charges against Smith—are clearly the kind of actions that he is employed to perform as a correctional officer. Smith's allegation that Morgan falsified the charges do not alter this analysis. See Brautigam v. Fraley, 684 F. Supp. 2d 589, 594 (M.D. Pa. 2010) (noting that allegations that a defendant's "conduct constitutes a crime, actual fraud, actual malice or willful misconduct" does not abrogate sovereign immunity under Section 2310 (citing Yakowicz v. McDermott, 548 A.2d 1330 (Pa. Commw. Ct. 1988))). It is also clear from the allegations in the complaint that Morgan's actions occurred within the time and space limits of his job and were motivated at least in part by a desire to serve his employer. Hence, we find that Morgan was acting within the scope of his employment and is entitled to sovereign immunity from Smith's state law tort claims.

---

[2] Smith does not argue that any of his other claims were outside the scope of defendants' employment other than the conclusory statement, "Nor was it in the scope of their duties to commit any of the other wrongs against Plaintiff." (Doc. 83 at 42). We will disregard this conclusory and undeveloped argument.

### C.     Federal Constitutional Claims

The court liberally construes Smith's amended complaint as advancing the following federal constitutional claims: (1) a claim that Morgan retaliated against Smith in violation of the First Amendment; (2) a claim that Morgan acted with deliberate indifference to a risk that Smith would be assaulted by other inmates in violation of the Eighth Amendment; (3) a claim that Morgan acted with deliberate indifference to a risk that Smith would be assaulted by correctional officers in violation of the Eighth Amendment; (4) a claim that Davis and McKeown violated Smith's Fourteenth Amendment right to due process; (5) a claim that McKeown violated Smith's Fifth Amendment right to be free from self-incrimination; and (6) a claim that McKeown violated Smith's Sixth Amendment rights.  To the extent Smith intends to advance any other federal constitutional claims against the remaining defendants, we will dismiss the claims because he has not alleged sufficient facts in support of the claims to state a "plausible claim for relief."  Iqbal, 556 U.S. at 679.[3]

---

[3] Smith's amended complaint acknowledges that Morgan, Davis, and McKeown were not "directly involved" in many of the claims he asserts in the complaint, but states that they should be held liable for all the alleged violations of his civil rights that occurred after their allegedly unlawful acts because "if not for [their] actions" the future events "would not have occurred."  (See Doc. 23 ¶¶ 168, 171-72).  Smith's opposition to the motion to dismiss characterizes this as the "domino effect" of defendants' actions.  (Doc. 83 ¶ 64).  We find that this theory of liability is too attenuated from defendants' alleged actions to adequately allege personal involvement.

### 1. Deliberate Indifference Claims

We liberally construe the amended complaint as advancing two deliberate indifference claims against defendant Morgan. First, that Morgan was deliberately indifferent to a risk that Smith would be assaulted by other inmates after Morgan made allegedly false allegations that Smith and another inmate engaged in sexual acts with each other in the shower. (See Doc. 23 at 7-8). Second, that Morgan was deliberately indifferent to a risk that Smith would be assaulted by other correctional officers when Morgan called for the officers to assist him based on his statement that Smith "came at" him. (See id. at 11).

We find that the amended complaint adequately states a deliberate indifference claim based on the risk of assault by other inmates. Prison officials' deliberate indifference to a risk that an inmate will be assaulted by other inmates may constitute a violation of the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994). The amended complaint alleges that Morgan started a false rumor that Smith engaged in sexual acts with another inmate and that this led to other inmates propositioning him for sex. (See Doc. 23 at 6-7). We find it plausible based on these allegations that Morgan's actions created a risk that other inmates would sexually assault Smith. Although the amended complaint does not allege that any sexual assault occurred, prisoners are not required to wait to be assaulted before they may obtain relief for prison officials' deliberate indifference to the risk of assault. Farmer, 511 U.S. at 845. We will deny the motion to dismiss this claim.

As for Smith's deliberate indifference claim based on the risk of assault by correctional officers, we find that Smith's allegations do not push his claim "across

11

the line from conceivable to plausible." Iqbal, 556 U.S. at 680 (quoting Twombly, 550 U.S. at 570). Smith alleges that as he walked past Morgan, Morgan called for other officers and told them that Smith "came at" him, but the amended complaint alleges that when the other officers arrived to assist Morgan, one of the officers handcuffed Smith "without incident." (Doc. 23 at 12). It is not alleged that any of the responding officers used force against Smith or that there appeared to be a risk of force being used. Rather, Smith's amended complaint appears to operate on the theory that Morgan calling other officers and telling them that Smith "came at" him created a substantial risk that the officers would assault Smith. We do not find that this is a plausible claim given the dearth of allegations that any of the officers appeared ready to use force. We will dismiss this claim for failure to state a claim upon which relief may be granted.

### 2. Due Process

Smith's due process claim asserts that defendants Davis and McKeown violated his rights to procedural due process during the disciplinary hearing process. This claim will be dismissed. Prison disciplinary proceedings only trigger due process protections when the sanction imposed on the prisoner plaintiff constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The sanction imposed on Smith—30 days in the RHU—does not impose an atypical and significant hardship on him. See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) ("Under Sandin, an administrative sentence of disciplinary confinement, by itself, is not sufficient to create a liberty interest.").

The amended complaint additionally alleges that the disciplinary proceeding triggers due process protection because Smith being found guilty of the underlying misconduct charges "will have a substantially adverse impact on Plaintiff's ability to apply for parole and have parole fairly considered." (Doc. 23 at 22-23). This argument is meritless. Inmates confined in Pennsylvania do not have "a constitutionally protected liberty interest in being paroled before [their] actual release." Fantone v. Latini, 780 F.3d 184, 186 (3d Cir. 2015). And to the extent Smith's claim is based on a due process right to have his parole application "fairly considered," Newman v. Beard, 617 F.3d 775, 783 (3d Cir. 2010), Smith has not alleged any facts as to how his guilt in a misconduct proceeding would affect this right. Smith's unsupported speculation that the misconduct will have "a substantially adverse impact" on his ability to "have parole fairly considered" is not sufficient to establish a protected liberty interest in parole. We will accordingly dismiss the due process claim.

### 3. Self-Incrimination

Smith's self-incrimination claim alleges that the disciplinary proceedings violated his Fifth Amendment right to be free from self-incrimination because he had to testify to facts that potentially incriminated him. Defendants argue this claim should be dismissed because Smith does not have a right to invoke the right without consequence and it appears from the complaint that he never attempted to invoke the right during the disciplinary proceeding. (Doc. 65 at 23-24).

We will dismiss this claim for lack of standing. Smith acknowledges that he did not invoke his Fifth Amendment rights during the disciplinary hearing because

13

"it would not have benefited [him] to do so in this circumstance." (Doc. 83 at 21). Smith notes that "if he did" invoke his right to remain silent, "no further questions would be asked and [he] would not have been able to present any defense and would have wrongfully been found guilty on all charges." (Id.) The Fifth Amendment right against self-incrimination is the right to be free from *compelled* self-incrimination. See U.S. CONST. amend. V; see also, e.g., Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cnty., 542 U.S. 177, 189 (2004) ("To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled."). Because Smith acknowledges that he made the voluntary decision to potentially incriminate himself because doing otherwise would not have benefited him, he does not have standing to assert a violation of his right against self-incrimination.

### 4. Sixth Amendment Claim

Smith's Sixth Amendment claim alleges that defendant McKeown violated his Sixth Amendment rights to an impartial decisionmaker and to confront witnesses during the relevant disciplinary hearing. This claim will be dismissed. As defendants correctly note, (see Doc. 65 at 24), the Sixth Amendment applies only to criminal prosecutions, Hannah v. Larche, 363 U.S. 420, 440 n.16 (1960), and prison disciplinary proceedings are not criminal prosecutions. Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

### D. Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, district courts must permit a curative amendment

14

unless the amendment would be inequitable or futile.  Phillips, 515 F.3d at 245.  We will deny leave to amend as futile with respect to Smith's due process, self-incrimination, and Sixth Amendment claims because those claims fail as a matter of law.  We will grant leave to amend, however, with respect to Smith's deliberate indifference claim against defendant Morgan arising from Morgan's alleged deliberate indifference to the risk of assault by correctional officers because that claim is factually, rather than legally, deficient.

## IV.   Conclusion

We will grant defendants' motion to dismiss in part and deny it in part, dismiss Smith's due process, self-incrimination, and Sixth Amendment claims with prejudice, dismiss Smith's Eighth Amendment deliberate indifference claim arising from the risk of assault by correctional officers without prejudice, and grant Smith leave to file a second amended complaint.  Defendants Davis and McKeown will be terminated from the case.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    August 1, 2024